ment from defendant to protect her against her obligations and liability.

We do not believe that the agreement made by defendant to protect her against this indebtedness, if valid at the time it was made, and for which, presumably, credit was given to defendant in the sale of the house, has been destroyed and canceled simply because the plaintiffs, for some reason not explained in the evidence, have refrained from filing their lien. If it were profitable so to do in the absence of evidence bearing upon the subject, it would be quite reasonable to conjecture that they have refrained from enforcing their lien for the very reason that this agreement was executed by the defendant to pay their indebtedness.

We think that the pleadings, as a whole, permit plaintiffs to urge the view of this case discussed. It is true that in their original complaint they alleged that "plaintiffs sold and delivered to said Edson B. Sawdy, upon the premises by them described, and at his special instance and request," certain goods, etc. This court, however, in its former decision, held that:

"While the complaint does not, in terms, allege that the materials furnished by the plaintiffs went into the construction of this building, yet, in conjunction with the contract, that is its plain meaning. This interpretation is further made clear by the defendant's answer, which alleges that by the contract referred to he became liable for whatever lumber and material sold to Sawdy by plaintiffs were used in the construction of said houses, and further admits the delivery of said lumber as alleged in the complaint, and the payment of $1,025 to them, but avers that such sum paid nearly, if not fully, for all the lumber so used. It is apparent, therefore, that the real controversy between the parties arises over the quantity of lumber used in said dwelling, of that delivered by the plaintiffs."

We think that it was not inconsistent with or outside of the pleadings, construing them as a whole, for plaintiffs to show that while the lumber, in the first instance, was sold and delivered upon the engagement of the husband, Sawdy, nevertheless some of it was so used in the construction of the houses after Mrs. Sawdy became the owner thereof that she had such an interest in the payment therefor as would furnish sufficient support for defendant's agreement to pay the unpaid balance.

In accordance with the views expressed, we think that the judgment must be reversed, and a new trial granted.

Judgment reversed, and new trial granted, with costs to appellants to abide event, upon questions of law only; the facts having been examined, and no error found therein. All concur; STOVER, J., in result.

---

### STRONG v. LONG ISLAND R. CO. et al.

(Supreme Court, Appellate Division, Second Department. March 4, 1904.)

1. CARRIER—INJURY TO GOODS—EVIDENCE—PRESUMPTION.

Where a carrier received for shipment a trunk in perfect condition, it is presumed that it continued in that condition while it was in the carrier's possession, and until it was delivered to a forwarding carrier, so that, in the absence of further proof, the first carrier is not liable for its damaged condition on delivery to the consignee.

2. SAME—LIABILITY OF FORWARDING CARRIER.

Evidence that a shipper delivered a trunk to a carrier in perfect condition is prima facie proof that a forwarding carrier received it in that condition, so that, in the absence of further proof, the forwarding carrier is liable if it is delivered to the consignee in a damaged condition.

3. SAME—RECEIPT LIMITING LIABILITY.

A person who, on delivery of goods to a carrier, accepts a paper that "amounts simply to a voucher," which he may use to identify his goods, he having no notice that it contains limitations on the carrier's liability or other special contract, is not bound by such limitations.

Appeal from Municipal Court, Borough of Queens, Third District.

Action by Selah B. Strong against the Long Island Railroad Company and another. From a judgment in favor of the plaintiff, defendants appeal. Reversed as to the defendant the Delaware, Lackawanna & Western Railroad Company, and affirmed as to the Long Island Railroad Company.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

Louis Hess, for appellant Long Island R. Co.

W. S. McGuire, for appellant Delaware, L. & W. R. Co.

Selah B. Strong, in pro. per. (Charles M. Bleecker, on brief).

JENKS, J. The plaintiff proved that when the trunk was delivered to the Delaware, Lackawanna & Western Railroad Company its contents were in perfect condition. The presumption is that that condition continued while it was in the possession of that company. Springer v. Westcott, 2 App. Div. 295, 37 N. Y. Supp. 909; Id., 19 App. Div. 366, 46 N. Y. Supp. 589, affirmed in 166 N. Y. 117, 59 N. E. 693. There is no evidence to overcome this presumption. The Long Island Railroad Company, the expressman, did not offer any evidence whatever. The plaintiff testifies that the trunk was placed on a delivery wagon at a hotel in Mt. Pocono, and that he went with the trunk to the railroad station at that place, checked it to New York, and saw it put on the train which arrived in New York at 12:15 p. m. on July 2d, and he does not testify to any matter which would tend to show that such damage was or could have been done while the trunk was in the possession of the said railroad company. Moreover, the plaintiff did not express the trunk by the Long Island Railroad Company until 3:30 p. m. of that day. It was not delivered by that company until the afternoon of July 3d, and, if the articles were in a wringing wet condition on the morning of July 4th, this fact would tend to show, if anything, that the damage by water was comparatively recent. The judgment against the Delaware, Lackawanna & Western Railroad Company cannot be sustained.

But the evidence is sufficient to hold the judgment against the Long Island Railroad Company, for the plaintiff prima facie proved that the trunk was delivered to the express company in its original condition when he showed that, after taking its check for that purpose, the express company received it from the Delaware, Lackawanna & Western Railroad Company, the latter fact being proved by the deliv-

¶ 2. See Carriers, vol. 9, Cent. Dig. § 891.

ery of the trunk to the plaintiff. Springer v. Westcott, supra. The Long Island Railroad Company offered no evidence against this prima facie case. There is no hardship in this doctrine viewing the relative positions of the traveler and the expressman, for the latter had full opportunity to inspect and to examine the trunk when it took it from the receiving station of the Delaware, Lackawanna & Western Railroad Company; and, if it received the trunk from that company in a damaged condition, it could at least have offered testimony to that effect. On the other hand, the traveler, under the circumstances, is entirely at a loss to prove specifically any act of commission or omission on the part of the express company. Therefore the burden is well placed upon the express company to show that it delivered the trunk in the condition in which it received it. I am of opinion that the receipt read in evidence does not limit the liability of the company. When a traveler delivers luggage to the agent of an express or a transfer company, and at the moment receives and accepts a paper that "amounts simply to a voucher" which he may use to trace and identify his luggage, no contract arises therefrom as a matter of law whereby the liability of the company is limited in accord with the terms and conditions expressed in such paper. Zimmer v. N. Y. C. & H. R. R. R. Co., 137 N. Y. 450, 33 N. E. 642, approving Grossman v. Dodd, 63 Hun, 324, 17 N. Y. Supp. 855; Springer v. Westcott, supra. In Grossman v. Dodd, supra, the court, per O'Brien, J., after discussing the rule, say:

"The question whether, in a particular case, the party receiving such a receipt accepted it with notice of its contents, or with notice that it contained the terms of a special contract, so as to require him to acquaint himself with its contents, is one of evidence to be determined by the jury. It will thus be seen that no such contract arises, as a matter of law, from the acceptance of the receipt; but the defendant, in order to relieve itself of full liability, is bound to establish a contract. Sunderland v. Westcott, 40 How. Prac. 469; Blossom v. Dodd, 43 N. Y. 264, 3 Am. Rep. 701; Rawson v. Penn. R. R. Co., 2 Abb. Prac. (N. S.) 220; Limburger v. Westcott, 49 Barb. 283."

See, too, Rosenthal v. Weir, 170 N. Y. 148, 63 N. E. 65, 57 L. R. A. 527. There is proof to warrant the finding that the plaintiff neither read the receipt nor had his attention called to it. In the absence of all other evidence, I think that it cannot be held that the liability of the expressman is limited by the terms of the receipt.

The judgment as to the Delaware, Lackawanna & Western Railroad Company should be reversed, and a new trial be ordered; costs to abide the event. As to the Long Island Railroad, the judgment should be affirmed, with costs. All concur.